IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **RENEE ROBINSON,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **GSE SYSTEMS, INC,** ) <br> **GSE PERFORMANCE SOLUTIONS, INC,** ) <br> **d/b/a GSE SOLUTIONS,** ) <br> **and HYPERSPRING, LLC,** ) <br> ) <br>     **Defendants.** ) | Civil Action No. 3:23-cv-455 <br><br> (Jury Demand) |

**COMPLAINT**

## I.     NATURE OF THE CASE

1. Plaintiff Renee Robinson brings this action against the defendants for unlawful harassment and discrimination based on sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Title VII) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* She also brings claims against the defendants for retaliation in violation of both Title VII, 42 U.S.C. § 2000e-3(a) and the ADEA. When Ms. Robinson exercised her right to speak out about workplace discrimination, the defendants retaliated by immediately terminating her employment and filing a baseless lawsuit against her. Now that the state court has summarily dismissed the defendants' lawsuit on the merits, Ms. Robinson brings a claim for malicious prosecution in violation of Tennessee common law. Through this lawsuit, Ms. Robinson seeks redress for harm and losses she sustained from the defendants' unlawful actions against her.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves federal questions brought under laws of the United States, namely Title VII and the ADEA. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to address the state law claims, which are substantially related to the events giving rise to the federal statutory claims as to be part of the same case or controversy.

3. Venue in the Eastern District of Tennessee, Northern Division at Knoxville, is appropriate pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred within this judicial district. Venue is also appropriate under Title VII's exclusive venue provision, U.S.C. § 2000e–5(f)(3), because the unlawful employment practices were committed in this judicial district; employment records relevant to such practices are maintained or administered in this district; and the defendants employed Ms. Robinson in this district.

## III. PARTIES

4. Plaintiff Renee Robinson is in the process of becoming a resident of Lake County, Florida. During the events giving rise to this lawsuit, Ms. Robinson was a resident of Loudon County, Tennessee. Ms. Robinson was employed by the defendants from July 31, 2018, to November 9, 2020. She worked primarily from her home office in Loudon County, Tennessee. Ms. Robinson was born in 1970 and was fifty years old when the defendants terminated her employment.

5. Defendant Hyperspring, LLC, d/b/a GSE Hyperspring ("Hyperspring") is a limited liability company formed in the State of Alabama. Defendant Hyperspring is registered to do business in Tennessee. Its principal office is located at 6940 Columbia Gateway Dr., Suite 470,

Columbia, Maryland 21046-3308. It can be served with process through its registered agent, Corporation Services Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

6. Hyperspring, LLC is a wholly owned subsidiary of Defendant GSE Performance Solutions, Inc., d/b/a GSE Solutions. GSE Solutions has its principal office at 1332 Londontown Boulevard, Suite 200, Sykesville, Maryland 21784-6893, and can be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, 7 Paul Street, Suite 820, Baltimore, Maryland 21202.

7. Defendant GSE Solutions, Inc. is a wholly owned subsidiary of Defendant GSE Systems, Inc., a publicly traded company. GSE Systems, Inc. has its principal office at 1332 Londontown Boulevard, Suite 200, Sykesville, Maryland 21784-6893, and can be served with process through its registered agent, CSC-Lawyers Incorporating Service Company, 7 Paul Street, Suite 820, Baltimore, Maryland 21202.

8. The defendants will be referred to collectively herein as "GSE" or "defendants."

9. At all relevant times, the defendants were "employers" as that term is defined by the ADEA, 29 U.S.C. § 630(b) and Title VII of the Civil Rights Act of 1964.

10. At all relevant times, each defendant acted as Ms. Robinson's employer or functioned as her joint employer.

11. Defendants exercised control over the terms and conditions of Ms. Robinson's employment, including but not limited to her compensation, promotion decisions, discipline, and investigations into her complaints about workplace discrimination.

### IV. CONDITIONS PRECEDENT

12. Ms. Robinson timely and dually filed charges of discrimination and retaliation with

the Equal Employment Opportunity Commission ["EEOC"] and Tennessee Human Rights Commission ["THRC"] alleging that the defendants engaged in unlawful employment practices in violation of Title VII and the ADEA. The EEOC issued a Notice of Right to Sue letter dated September 28, 2023.

13. This Complaint is timely filed in this Court after exhaustion of the EEOC/THRC administrative process and within ninety days from the date Ms. Robinson received the notice of her right to file a lawsuit in federal court. All administrative conditions precedent to filing this action have been met.

## V. FACUTAL ALLEGATIONS

14. Ms. Robinson worked as Vice President of Business Development and Operations for GSE Hyperspring from July 30, 2018, until her termination on November 9, 2020.

15. When she was hired, GSE's senior leadership team told Ms. Robinson that she was being hired to replace Hyperspring's Senior Vice President of Operations upon her retirement and eventually Hyperspring's President after his buyout contract completed and he retired. Ms. Robinson trained under these company officers to ensure continuity of service upon their departures.

16. Throughout Ms. Robinson's employment, the senior leadership team explained to GSE's clients her role and her expected future role.

17. For two and a half years, Ms. Robinson met her employer's expectations without any issues. She achieved her goals, brought in new business, and successfully ran projects for GSE's clients with very little oversight from officers of the company.

18. Ms. Robinson was a highly successful employee for GSE until she engaged in

protected activity.

19. On September 21, 2020, GSE terminated the President of Hyperspring, Paul Abbott, who was Ms. Robinson's direct supervisor. Mr. Abbott continued to work for Hyperspring as Ms. Robinson's direct supervisor for another month before he transitioned to working as a consultant for GSE.

20. At about the same time that GSE discharged Mr. Abbott from his role as President of Hyperspring, it hired Brian Greene. Mr. Greene's job title was Vice President, Nuclear Training & Consulting for GSE Solutions.

21. GSE hired Mr. Greene from outside the company without posting the position or otherwise notifying Ms. Robinson of the opportunity to compete for the position, even though she met or exceeded all criteria identified in the job description.

22. Instead, GSE quietly hired Mr. Greene, a substantially younger, male candidate with less relevant experience than Ms. Robinson.

23. For the first several weeks of his employment with GSE, Mr. Greene had little to no presence in the office or interactions with Ms. Robinson. Mr. Abbott continued to function as Ms. Robinson's direct supervisor until about October 21, 2020.

24. At some point, Mr. Greene became Ms. Robinson's direct supervisor.

25. As Mr. Greene transitioned into his new role and began spending more time interacting with Ms. Robinson, he regularly sought her expertise and expressed his expectation that she should train him in various aspects of his job. Ms. Robinson made every effort to facilitate his transition into his new role and respond to his requests for assistance.

26. Ms. Robinson worked with Mr. Greene from on or about October 21, 2020, until he fired her on November 9, 2020, less than three weeks later.

27. During this time, Mr. Greene engaged in hostile, condescending, and discriminatory behavior toward Ms. Robinson. In one instance, Mr. Greene met with Ms. Robinson's staff and began changing the processes currently in place without including Ms. Robinson in the meeting even though it directly affected her job. When Ms. Robinson asked Mr. Greene about the meeting, Mr. Greene told her that she "[didn't] need to worry [her] little head" about these things anymore. Although they both held the title of Vice President, Mr. Greene essentially treated Ms. Robinson as his personal secretary. Mr. Greene did not speak to Ms. Robinson's male colleagues in the same condescending and dismissive manner.

28. On October 19, 2020, Ms. Robinson raised concerns to Mr. Greene about discriminatory actions that were being taken in the company against Ms. Robinson and others. The next day, October 20, 2020, GSE's in-house counsel, Daniel Pugh, who was the primary contact for such complaints, invited Ms. Robinson to speak with him about her concerns.

29. On October 21, 2020, Ms. Robinson raised the same concerns to Mr. Pugh, along with additional concerns about Mr. Greene's discrimination against Ms. Robinson based on her gender and age. Ms. Robinson also told Mr. Pugh that she suspected age discrimination based on the way the company had treated other older employees. Ms. Robinson told Mr. Pugh that she believed GSE had discriminated against her when it hired Mr. Greene without posting the job or considering her for the position. She also told Mr. Pugh that she believed the company was discriminating against her in her compensation and benefits because of her gender, pointing out by way of example other instances of discrimination by Mr. Greene and by GSE against other employees.

30. At about this time, and in response to her complaints, GSE officers allowed Mr. Greene to begin monitoring Ms. Robinson's emails.

6

Case 3:23-cv-00455-CLC-JEM   Document 1   Filed 12/19/23   Page 6 of 15   PageID #: 6

31. Even after Ms. Robinson spoke directly to Mr. Greene and Mr. Pugh about discrimination, Mr. Greene continued to treat Ms. Robinson as his personal secretary. Although she tried to satisfy his demands or explain why she could not, Mr. Greene refused to accept her explanations even though some of his demands were impossible to satisfy.

32. On October 27, 2020, within days of Ms. Robinson's complaints to Mr. Pugh about discrimination, Mr. Greene sent an email to Ms. Robinson containing unwarranted criticism that she was not cooperating with him. Mr. Greene sent a similar email containing unwarranted criticism on November 3, 2020. Mr. Greene made efforts to build a case against her with these emails only after Mr. Pugh opened an investigation into Ms. Robinson's complaints and talked to Mr. Greene and other GSE officers about her complaints.

33. On November 6, 2020, after Mr. Greene made accusations about Ms. Robinson's purported lack of cooperation to GSE President Kyle Loudermilk, Mr. Loudermilk sent an email to Ms. Robinson, with a copy to Mr. Pugh, threatening Ms. Robinson with disciplinary action. Mr. Loudermilk had never spoken with Ms. Robinson or asked for her input about Mr. Greene's unwarranted accusations. This occurred even though Mr. Greene was a new employee, while Ms. Robinson had proven herself to be a valuable executive and an asset to the company, and it only occurred after Ms. Robinson complained to Mr. Greene and to Mr. Pugh about discrimination.

34. Ms. Robinson responded to Mr. Loudermilk's email, with a copy to Mr. Pugh, explaining in detail how she had been trying to satisfy Mr. Greene's demands to no avail, that Mr. Greene was falsely accusing her of misconduct to build a disciplinary case against her, and that she was being subjected to a hostile work environment. She sent this email on Friday evening November 6, the same day that Mr. Loudermilk sent his message to her threatening disciplinary action based on Greene's unwarranted accusations.

35. Mr. Greene terminated Ms. Robinson's employment the next business day, on Monday, November 9, 2020.

36. GSE conducted no investigation into her complaint that Mr. Greene was falsely accusing her of misconduct and that GSE was subjecting her to a hostile work environment, even though she had previously reported discrimination before Mr. Greene accused her of misconduct.

37. During the termination meeting, Mr. Greene was angry, raised his voice at Ms. Robinson, and accused her of insubordination for the email she had written to Mr. Loudermilk and Mr. Pugh on November 6, 2020, complaining about the hostile work environment created by Mr. Greene. He emphasized to Ms. Robinson that her complaint about him to Mr. Loudermilk and Mr. Pugh was insubordinate and justified his decision to terminate her employment. This is direct evidence of retaliatory discharge.

38. After terminating Ms. Robinson's employment, GSE continued to retaliate by harassing her and filing a baseless lawsuit against her, accusing her of improperly downloading confidential and proprietary information that belonged to GSE.

39. On the same day it discharged her, November 9, 2020, GSE sent a letter to Ms. Robinson's personal email account after 5:30 p.m., demanding that she must return all company property by the following day, November 10, 2020. Ms. Robinson did not even see the letter until after GSE's unreasonable one-day deadline had passed.

40. Two days later, on November 12, 2020, GSE had its outside counsel send a threatening letter to Ms. Robinson demanding that she immediately return her company-issued laptop computer and "all instances of [her] impermissible download of the Brightmove database," and stating that the company was prepared to take legal action against her.

41. The hostility of that letter in the context of GSE's previous adverse actions caused

Ms. Robinson to suffer a severe panic attack that resulted in a trip to the emergency room and medication to recover. Once she recovered, she responded to this correspondence, explaining that the container GSE's counsel had sent to her for returning the computer and other material was not large enough. She coordinated with GSE counsel and Human Resources representatives to reach an acceptable procedure by which she could return the computer and material in her possession.

42. She also explained to GSE again that she had not improperly downloaded the Brightmove database or accessed her company computer since the day GSE discharged her.

43. Ms. Robinson voluntarily returned GSE's computer, along with other material legitimately in her possession at her home office. She did so promptly after GSE made appropriate arrangements to pay for shipping, and within only ten days after being wrongfully fired by the GSE officers to whom she complained of discrimination.

44. After GSE received Ms. Robinson's computer and large boxes of files, it performed a forensic analysis of her computer, even though it does not routinely take such actions. GSE confirmed that Ms. Robinson had returned the Brightmove database on her computer, but then it demanded that she produce two USB drives that had been used with the computer, insisting that those drives contained proprietary material.

45. The Brightmove database that GSE accused her of improperly downloading had been created by Ms. Robinson who was responsible for maintaining it. It is not disputed that Ms. Robinson secured a copy of the database on her company-issued laptop computer at the instruction of tech support to safeguard information while updates were implemented. Ironically, this occurred while Ms. Robinson was working within the scope of her employment to satisfy Mr. Greene's demand that she must obtain a software license for him to access the database.

46. Ms. Robinson had already explained to Mr. Greene the reason for downloading the

database when he asked her about it during her termination meeting. She told him that she had been instructed by tech support to secure a backup copy while updates were implemented.

47. Ms. Robinson told Mr. Greene that he could promptly and easily confirm these facts by asking tech support personnel or the employee who assisted in maintaining the database.

48. GSE did in fact confirm the truth of Ms. Robinson's explanation shortly after terminating her employment. The employee who assisted with updating the Brightmove database testified that she told GSE management how the database was downloaded to safeguard it as instructed by tech support.

49. GSE disregarded Ms. Robinson's explanation and made unwarranted accusations that she stole the database. It did so to disguise its discriminatory and retaliatory motives for terminating her employment and to dissuade her from pursuing her claims of discrimination and retaliation against GSE.

50. GSE filed its baseless and retaliatory lawsuit in the Chancery Court for Loudon County, Tennessee, on Friday December 4, 2020, accusing her of stealing the database. GSE scheduled a hearing for the following Monday.

51. Ms. Robinson attended the hearing unrepresented by counsel to explain that the USB drives belonged to her, contained mostly personal files and a few non-proprietary documents related to GSE, and were appropriately in her possession. She explained to the court that she had an active discrimination and harassment investigation within the company when GSE fired her and that the files specifically related to that, but they contained no database or proprietary information.

52. Thereafter, Ms. Robinson hired attorney Tasha Blakney to represent her in the state court lawsuit.

53. GSE analyzed the USB drives and confirmed that one USB drive had no active files

at all and had not been used for five months before Ms. Robinson's discharge, while the other USB drive had personal files belonging to Ms. Robinson as well as the files she described to the court and files GSE had given to her after it fired her.

54. In August 2021, due to the prohibitive expense of GSE's state court lawsuit, Ms. Robinson voluntarily agreed to give GSE any file on the USB that was related to her employment at GSE, even though the files legitimately belonged to her and contained no proprietary information. GSE, however, never dismissed its lawsuit, even after confirming that Ms. Robinson had not taken proprietary information, had not copied the subject database, and had not engaged in misconduct or violated any law, agreement or GSE policy.

55. GSE also continued to pursue unwarranted claims that Ms. Robinson violated a non-compete agreement, despite never producing a signed noncompete agreement, and having no evidence to dispute Ms. Robinson's testimony that she never signed a noncompete agreement, nor had she engaged in any competitive activities.

56. For the past three years, GSE's retaliatory litigation has caused Ms. Robinson to be subjected to a temporary restraining order (TRO). GSE keenly understood that a TRO would have an extremely detrimental impact on Ms. Robinson professionally. For example, it would undermine her ability to obtain certain levels of a security clearance and preclude her from engaging in aspects of her profession.

57. GSE's aggressive legal action and investigation were baseless and retaliatory. Without any evidence to support its legal claims against Ms. Robinson, and with no proof of loss or injury to GSE, the defendants' continuation of the lawsuit was frivolous and retaliatory, intended to harass, intimidate, cause unnecessary expense, and dissuade Ms. Robinson from pursuing her claims against GSE.

58. GSE's lawsuit against Ms. Robinson was eventually dismissed on a motion for summary judgment, but Ms. Robinson was forced to incur over $100,000 in legal fees and expenses due in large part to GSE's needlessly aggressive litigation tactics.

59. As a direct result of GSE's discriminatory and retaliatory employment practices, Ms. Robinson has experienced harm, including humiliation, indignity, anxiety, emotional distress, damage to her reputation and future earning capacity, and substantial economic losses, including lost earnings, benefits, expenses, and attorney's fees, including fees incurred by Ms. Robinson in defending against the baseless allegations in the state court lawsuit.

60. In retaliation for her protected activities, GSE took materially adverse actions against Ms. Robinson that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

61. The reasons offered by GSE to justify its harassment and adverse actions against Ms. Robinson are a pretext to mask its true discriminatory and retaliatory motives.

62. GSE's actions against Ms. Robinson described herein were carried out willfully, intentionally, maliciously, and/or with reckless indifference to her rights under the law.

## VI. CAUSES OF ACTION

### Count 1: Unlawful Discharge

63. Ms. Robinson re-alleges and incorporates herein the preceding paragraphs.

64. GSE violated Title VII of the Civil Rights Act of 1964, 42 US.C. §§ 2000e-2(a) and 2000e-3(a) when it discriminated against Ms. Robinson and terminated her employment on the basis of her sex and in retaliation for her opposition to sex discrimination.

65. GSE violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §

621 *et seq.*, when it discriminated against Ms. Robinson and terminated her employment because of her age and in retaliation for her opposition to age discrimination.

Count 2: Retaliation

66. Ms. Robinson re-alleges and incorporates herein the preceding paragraphs.

67. GSE violated Title VII, 42 U.S.C. § 2000e-3(a) and the ADEA when it took materially adverse actions against Ms. Robinson that would dissuade a reasonable employee from reporting or complaining about unlawful discrimination, including but not limited to retaliatory harassment and litigation.

68. GSE retaliated against Ms. Robinson because she opposed employment practices made unlawful by Title VII and/or the ADEA.

Count 3: Malicious Prosecution

69. Ms. Robinson re-alleges and incorporates herein the preceding paragraphs.

70. GSE pursued a civil proceeding against Ms. Robinson in Loudon County Chancery Court in bad faith and with malice.

71. Even after Ms. Robinson provided proof and sworn testimony that GSE's lawsuit against her was meritless and therefore GSE had no basis for an honest or sincere belief that the lawsuit was justified by the existing facts and circumstances, GSE took an active part in the continuation of the lawsuit.

72. GSE's meritless lawsuit ended with a judgment on the merits in favor of Ms. Robinson. *See Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 748–49 (Tenn. 2022) *(citing Himmelfarb v. Allain*, 380 S.W.3d 35, 41 (Tenn. 2012)).

# VII. PRAYER FOR RELIEF

Ms. Robinson requests that the Court grant her the following relief:

a) Enter judgment for Ms. Robinson and against the defendants;

b) Declare that the actions of defendants violated the ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), and Tennessee common law;

c) Enjoin the defendants from engaging in further unlawful acts;

d) Order defendants to pay Ms. Robinson back pay, benefits, increments, and financial adjustments to which she is entitled;

e) Order defendants to pay Ms. Robinson front pay in lieu of reinstatement;

f) Award Ms. Robinson compensatory damages for mental and emotional distress in an amount to be determined by a jury;

g) Award Ms. Robinson reasonable attorneys' fees and the costs of this cause, including fees and expenses she incurred defending GSE's malicious, retaliatory, and frivolous lawsuit;

h) Award Ms. Robinson liquidated damages for willful violation of the ADEA;

i) Award punitive damages against each defendant; and

j) Award Ms. Robinson interest and any further relief this Court deems just, proper, and equitable.

k) Ms. Robinson requests a jury trial in this cause.

RENEE ROBINSON

By her attorneys:

s/ *Jennifer B. Morton*
Jennifer B. Morton, BPR #015585
Summer H. McMillan, BPR #020296
**JENNIFER MORTON LAW, PLLC**

8217 Pickens Gap Road
Knoxville, TN 37920
(865) 579-0708
(865) 579-0787 (fax)
jen@jmortonlaw.com
summer@jmortonlaw.com

*Attorneys for Renee Robinson*